IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INCREDIBLY EDIBLE DELITES, INC., and <br> INCREDIBLE FRANCHISE CORPORATION, <br><br> Plaintiffs, <br><br> vs. <br><br> EDIBLE ARRANGEMENTS, LLC., and <br> EDIBLE ARRANGEMENTS FRANCHISE GROUP <br><br> Defendants. | Civil Action No.: |

**DECLARATION OF ELLEN DAVIS**

I, Ellen Davis, do hereby declare as follows:

1. I am the secretary and treasurer of Incredibly Edible Delites, Inc. ("Incredibly Edible Delites"), and the President of Incredible Franchise Corporation ("Incredible Franchise"), plaintiffs in the above captioned action which I refer to collectively hereinafter as "Incredibly Edible".

2. I make this declaration in support of Incredibly Edible s motion for a temporary restraining order and/or preliminary injunction. References to "Exhibits" made herein are to the separately bound EXHIBITS IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION.

Incredibly Edible Delites has operated for over 18 years under the name Incredibly Edible Delites and is in the business of making, selling, and delivering decorative fruit baskets. One

popular type of decorative fruit basket resembles a bouquet of flowers, hereinafter generically referred to as floral fruit bouquet. Exhibit 1 shows a catalog of Incredibly Edible Delite's products. Incredibly Edible s product line has steadily expanded since it began in 1985. Incredibly Edible s floral fruit bouquets comprise pieces of fresh fruit cut to resemble flowers that are arranged to resemble a floral bouquet. These floral fruit bouquets are usually purchased as gifts, which are usually sent by the purchaser through our company's delivery service to the intended recipient. Often the floral fruit bouquets are purchased and delivered as an alternative to flowers for both commercial and residential accounts. The Incredibly Edible floral fruit bouquets also are purchased for entertaining purposes, and are often used as centerpieces or room decorations for banquets, parties, weddings, corporate events, and other social events and occasions. It is not uncommon to see them in hospitals, in patient rooms or at nurses stations, as the floral fruit bouquets are especially good get-well gifts.

3. Incredibly Edible operated a single store until about 1993 when it started to expand its business through franchising. Incredible Franchise is a related corporation of Incredibly Edible Delites and has operated for over 7 years, since it became incorporated in February of 1995. Incredible Franchise Corporation was formed for the sole purpose of marketing, selling, and managing Incredibly Edible Delite s franchises. Incredible Franchise, also in the business of making, selling, and delivering edible floral fruit bouquets through its franchisees, offers and sells Incredibly Edible Delite franchises. Incredibly Edible and its franchisees have sold millions of dollars of our floral fruit bouquets.

4. Incredibly Edible Delites is the owner of U.S. Trademark Registration No. 1,755,554 for the mark INCREDIBLY EDIBLE DELITES, INC. EDIBLE FLORAL CREATIONS and design

(hereinafter referred to as the Registered INCREDIBLY EDIBLE mark covering the following goods: floral fruit and vegetable baskets consisting of cut or sliced fruits and vegetables. Exhibit 2 shows the trademark registration mentioned above. Incredibly Edible has used the Registered INCREDIBLY EDIBLE mark in connection with the advertising promotion, and sale of its goods and services since 1991. The mark shown in Exhibit 2 has also been used by Incredibly Edible in connection with the sale of franchises and franchise services.

5. Incredibly Edible Delites is the owner of INCREDIBLY EDIBLE DELITES trademark/service mark (hereinafter the INCREDIBLY EDIBLE DELITES mark"). Incredibly Edible Delites licenses Incredible Franchise, and in turn, Incredible Franchise's franchisees to use these marks. Incredibly Edible has used its INCREDIBLY EDIBLE DELITES mark with the sale and delivery of floral fruit bouquets, in both intrastate commerce and in interstate commerce, continuously from at least as early as 1985 to the present. A representative sample of a hangtag having the INCREDIBLY EDIBLE DELITES mark imprinted thereon, which accompanies the floral fruit bouquets sold and delivered by Incredibly Edible, is provided as Exhibit 3. Incredibly Edible has also used its INCREDIBLY EDIBLE DELITES mark in interstate commerce in connection with franchising services, continuously since at least as early as 1993, and to the present. The Registered INCREDIBLY EDIBLE mark and the INCREDIBLY EDIBLE DELITES mark hereinafter are collectively referred to as the "INCREDIBLY EDIBLE marks".

6. Incredibly Edible Delites is the owner of the FRUITFLOWERS trademarks/service marks, including "FRUITFLOWERS", "FRUITFLOWERS.COM" and "FRUIT FLOWERS" (hereinafter collectively "FRUITFLOWERS marks"). Incredibly Edible Delites licenses Incredible Franchise, and in turn, Incredible Franchise's franchisees to use these marks.

Incredibly Edible has used its FRUITFLOWERS marks with the sale and delivery of floral fruit bouquets, in both intrastate commerce and in interstate commerce, continuously from at least as early as February 1998 to the present. A representative sample of a hangtag having the mark FRUITFLOWERS.COM imprinted thereon, which accompanies the floral fruit bouquets sold and delivered by Incredibly Edible, is provided as Exhibit 3.

7. Through the continuous use of its INCREDIBLY EDIBLE marks and the FRUITFLOWER marks in connection with the goods and services of Incredibly Edible (including the Incredibly Edible franchisees who are licensed to use the mark), the marks have become well known with respect to the quality sale and delivery of Incredibly Edible's edible floral fruit bouquets. Incredibly Edible has received attention in the form of news articles. Exhibit 4 shows a Franchise Resource Center article about Incredibly Edible. Exhibits 5 and 6 show articles about Incredibly Edibles from The Californian NCTimes.net. Exhibit 7 shows an Entrepreneur.com/Entrepreneur Magazine article about Incredibly Edible.

8. Incredibly Edible's INCREDIBLY EDIBLE marks and the FRUITFLOWERS marks have been extensively promoted and advertised by Incredibly Edible in connection with the sale and delivery of floral fruit bouquets. Incredibly Edible has spent considerable sums of money advertising its products and delivery services in connection with the INCREDIBLY EDIBLE marks and the FRUITFLOWERS marks. It s estimated that since 1991, when Incredibly Edible began using its INCREDIBLY EDIBLE marks, up to the present, including through 1998 when Incredibly Edible began using its FRUITFLOWERS marks, over 1.2 million dollars has been spent by Incredibly Edible and its franchisees on advertising and promoting the Incredibly Edible floral fruit bouquets and delivery services in connection with its INCREDIBLY EDIBLE and

FRUITFLOWERS marks. Our use, advertising, and promotion of our INCREDIBLY EDIBLE marks and FRUITFLOWERS marks in connection with our products and services has built value in these marks, as consumers have come to recognize Incredibly Edible's INCREDIBLY EDIBLE and FRUITFLOWERS floral fruit bouquets and delivery services and the franchise opportunities that we offer. Our FRUITFLOWERS marks and INCREDIBLY EDIBLE marks and the goodwill symbolized by our marks are extremely valuable assets of Incredibly Edible.

9. Incredibly Edible also promotes its INCREDIBLY EDIBLE marks and FRUITFLOWERS marks with its floral fruit bouquets and delivery services through a variety of media including print media, including newspapers, magazines, church and synagogue bulletins, business journals/publications, movie theatre advertisements, and billboards. Examples of print media advertisements include the following:

a. Hang tag of the Incredibly Edible Delites mark imprinted and affixed to products, (Exhibit 3)

b. Photographs of Incredibly Edible Delites delivery vehicles, (Exhibit 8)

c. Countertop advertisement, (Exhibits 9 and 10)

d. Philadelphia Magazine advertisement, August 1998, (Exhibit 11)

e. Incredibly Edible Delites, Inc., Advertising Proof, 1999 (Exhibit 12)

f. Philadelphia Magazine advertisement, April 2000, (Exhibit 13)

g. Philadelphia Magazine advertisement, August 2000, (Exhibit 14)

h. Delaware County Daily Times advertisement, October 3, 2000, (Exhibit 15)

i. Delaware County Daily Times advertisement, November 28, 2000, (Exhibit 16)

j. Philadelphia Magazine advertisement, November 2000, (Exhibit 17)

k.  Clipper Magazine advertisement, 2001, (Exhibit 18)

l.  Philadelphia Magazine advertisement, February 2001, (Exhibit 19)

m.  "Elegant Touch" Bridal Show Guide, advertisement on reverse cover, March 2001, (Exhibit 20)

n.  Summertime Cookbook 2001 - A Shopper's Guide Publication advertisement, June 29, 2001, (Exhibit 21)

o.  Philadelphia Magazine advertisement, October 2001, (Exhibit 22)

p.  Presentation documents, Las Vegas Franchisee s meeting, October 2001, (Exhibit 23)

q.  Attache magazine advertisement, November 2001, (Exhibit 24)

r.  Real Philly magazine advertisement, Winter 2001/2002, (Exhibit 25)

s.  The Cheesecake Factory Restaurants, Inc., Wine List, advertisement on reverse side, 2002, (Exhibit 26)

t.  The Daytona Beach News-Journal advertisement, March 2002, (Exhibit 27)

u.  Kitchen & Bath   San Diego Living advertisement, January/February 2001, (Exhibit 28)

v.  Delaware Today advertisement, December 1998, (Exhibit 29)

w.  Indianapolis Monthly advertisement, November 1999, (Exhibit 30)

x.  The Charlotte Observer advertisement, October 1999, (Exhibit 31)

y.  The Baltimore Sun advertisement, June 2000, (Exhibit 32)

z.  The New York Times ad, September 2001, (Exhibit 33)

11. Incredibly Edible also promotes the INCREDIBLY EDIBLE marks and the FRUITFLOWERS marks in connection with its floral fruit bouquets and delivery services through television advertising. Exhibit 34 is a videotape of a television commercial which aired in Grand Rapids, Michigan in September 2001.

12. Incredibly Edible also promotes the INCREDIBLY EDIBLE marks and the FRUITFLOWERS marks in connection with its floral fruit bouquets and delivery services through radio advertising. Exhibit 35 is the transcription of a radio commercial which aired in about February 20, 2002.

13. Incredibly Edible also maintains an Internet Web site, **www.fruitflowers.com**, as another way of promoting its business, including the INCREDIBLY EDIBLE marks and the FRUITFLOWERS marks and its floral fruit bouquets and delivery services. A printout of the Incredibly Edible **www.fruitflowers.com** Web site pages is provided as Exhibit 36. Exhibit 37 shows an invoice for the registration of the fruitflowers.com domain name for the period 16-Feb.-1998  16 Feb.-2000. Through Incredibly Edible's **www.fruitflowers.com** Web site, potential franchisees may inquire for further information about owning and operating an Incredibly Edible Delites franchise store. Incredibly Edible's Web site **www.fruitflowers.com** is not only used for developing potential franchisees, but is also used to display the fruit flower bouquet products offered for sale and delivery by Incredibly Edible.

14. Incredibly Edible has undertaken action to protect its valuable trademarks, including stopping another company's infringing using of Incredibly Edible's INCREDIBLY EDIBLE mark in connection with the sale of floral fruit bouquets. The company's product was not being delivered fresh, and Incredibly Edible received a complaint from the other company's

customer, who mistakenly thought the product being sold by that other company using our INCREDIBLY EDIBLE mark came from or was associated with us.

15.     Incredibly Edible utilizes internet marketing and Web site traffic to promote its business. Exhibit 38 is correspondence from the web hosting company, The Glistening Web Communications Corporation, which maintains Incredibly Edible s **www.fruitflowers.com** Web site. Mr. Brouse estimates viewership of Incredibly Edible s Internet marketing and Web site traffic to reach a substantial number of viewers, estimating viewership of more than 4,000,000 viewers per month.

16. Incredibly Edible Delites's operating location (company-owned store) and the corporate offices of Incredible Franchise are located in Broomall, Pennsylvania, a suburb of Philadelphia. In addition, Incredibly Edible franchise stores are located throughout the United States, including Pennsylvania (two of them, one in Chester County, the other in Bucks County), New Jersey, Delaware (also serving parts of Maryland), California, Indiana, Michigan, North Carolina (which also serves South Carolina), and Florida. In addition, there are plans for the opening of additional locations in the future, as the company grows its business. Immediate additional franchise locations including Fort Myers, Florida are expected to be operating within the coming months.

17.     Incredibly Edible receives inquiries from potential franchisees through the **www.fruitflowers.com** Web site. Our records contain over 1,300 potential customers for the Incredibly Edible Delites franchises, as demonstrated by franchise inquiries sent and received through the **www.fruitflowers.com** Web site.

18.     As a result of the advertising mentioned above, Incredibly Edible is known in thirty-two

states spanning the nation. The voluminous franchise inquiries attest to such widespread knowledge of Incredibly Edible s business. Exhibit 39 shows a chart of such inquiries, correlating number of inquiries by month. Exhibit 40 shows another chart, correlating number of inquiries by state.

19. In or around February 1997, Incredibly Edible engaged Daisy Systems, Inc. ( DSI ) to develop a software program to assist Incredibly Edible's business operations. DSI referred Incredibly Edible to its eastern United States distributor, Northeast Systems Group, Inc. and its president, Tariq Farid. I contacted Tariq Farid and we discussed, <u>inter alia</u>, Incredibly Edible's business, operational needs, and desire for a program to, among other things, input orders, track inventory, maintain sales information and financial data, and other business operations. Tariq Farid advised Incredibly Edible that while the DSI s  Daisy Floral Management System ( DFMS ) program was essentially a system used by florists, he could, and would, customize the program to adapt to our business. To this end, Tariq Farid requested, received, and examined Incredibly Edible's confidential and non-confidential business information, including brochures, designs, sales information, and customer information as well as extensively questioned me and other shareholders and employees about Incredibly Edible's business.

20. In or around April 1997, Tariq Farid visited Incredibly Edible's Broomall, Pennsylvania business premises to install the hardware and customized DFMS software program. During this time, Tariq Farid had access to all of our designs, sales information, financial data and other confidential and non-confidential business information and reviewed Incredibly Edible's on-site creation of its decorative fruit baskets, including Incredibly Edible s floral fruit bouquets products. Tariq Farid and I remained in regular contact by telephone, and Tariq Farid made an

additional on-site visit to Incredibly Edible's Broomall premises. Tariq Farid, who was paid in full for all services rendered, also rendered similar services to our Incredibly Edible Delite franchisees on our recommendations. Tariq Farid spent significant time questioning Incredibly Edible's employees about Incredibly Edible's fruit basket designs, arrangements, customer interest and base, business costs, profits, growth, franchise operations and plans, all under the guise of a computer software consultant. Tariq Farid s relative, Kamran Farid, also provided computer consulting services on occasions when Tariq Farid was not available.

21. After obtaining information from Incredibly Edible and our Incredibly Edible Delites franchisees, Tariq Farid and his Edible Arrangements, LLC and Edible Arrangements Franchise Group (hereinafter both defendants are collectively referred to as  Edible Arrangements ) started their business and began to sell floral fruit bouquets, the designs of which we asserted were essentially copied from Incredibly Edible. In December of 1998, Tariq Farid and Edible Arrangements registered the domain name  ediblearrangements.com.  (See Exhibit 41.)

22. As a result of Edible Arrangements  activities, Incredibly Edible wrote letters to Edible Arrangements and Tariq Farid demanding that they cease and desist use of Incredibly Edible's proprietary copyrighted designs. Incredibly Edible sent the last letter on August 5, 1999. On or about August 6, 1999, Edible Arrangements and Tariq Farid filed a complaint for declaratory judgment against Incredibly Edible and its employees/shareholders, including myself, and Susan Ellman, the president of Incredibly Edible, seeking a declaration of non-infringement with respect to Incredibly Edible's copyrights, which our company had asserted against Tariq Farid and Edible Arrangements. Incredibly Edible filed counterclaims for copyright infringement and for misappropriation under Connecticut law. That case was subsequently settled, and the

copyright infringement counts and misappropriation counts were dismissed. After the settlement, the Farids and Edible Arrangements continued to sell, deliver and advertise floral fruit bouquets using designs approved by the settlement agreement.

23. I am familiar with the Internet search engines, where people can log on to a Web site, and perform a search in order to find Web sites of interest to the word or topic searched. On or about February of 2002, I learned from one of our Incredibly Edible Delites franchisees that when "fruitflowers" was entered on the www.msn.com Web site, the result returned included text which stated, "This Internet Keyword goes directly to the fruitflowers site." A printout of the **www.msn.com** search result is attached as Exhibit 42. I was concerned that this would cause confusion because the Web site is not our Incredibly Edible "fruitflowers" Web site, **www.fruitflowers.com**, but rather, is the Web site of Edible Arrangements, **www.ediblearrangements.com**, owned by Tariq Farid. Similarly, a search for the term "fruitflowers" at the AOL Web site www.aol.com resulted in a link to **www.ediblearrangements.com**. Exhibit 43 is a printout of the www.aol.com search results. Also, a search of fruit flowers on **www.lycos.com** also returns Edible Arrangements as a sponsored listing (Exhibit 44). Exhibit 45 is a "who is" search for Edible Arrangements, and Exhibit 46 is a printout of the ediblearrangements.com Web site. I also learned that Edible Arrangements owns the **www.deliciousdesigns.com** domain name (Exhibit 47), and **deliciousdesigns.com** is linked to ediblearrangements.com.

24. Upon further investigation of how this could have happened, I learned that Edible Arrangements had registered the Internet Keyword "fruitflowers" with a registrar called RealNames Corporation. I understand that Edible Arrangements registration of our

11

FRUITFLOWERS marks as an Internet Keyword causes the search result to return the Edible Arrangements Web site **www.ediblearrangements.com** instead of Incredibly Edible's **www.fruitflowers.com** Web site. The **ediblearrangements.com** Web site is also an interactive Web site through which customers can view, select, and order for delivery Edible Arrangements decorative fruit baskets. Customers can also obtain information regarding franchise opportunities at **ediblearrangements.com**. I understand that Edible Arrangements is paying money to RealNames to have "fruitflowers" associated with the Edible Arrangement's Web site.

25. I have also learned that Edible Arrangements had registered the domain name "fruitflower.com," which is now used by Edible Arrangements as an address for its Web site (Exhibit 48). Exhibit 49 shows the results for a who is search for

fruitflower.com . I further learned that Edible Arrangements Web site, **www.ediblearrangements.com**, had "fruitflowers , "Fruit flowers , Incredible , Edible , Delite , Delights , Fruit , Flowers , Fruitflowers , Fruit Flowers , and Edible Delight encoded as a metatag and/or portal keyword in the source code of its Web site. Exhibit 50 shows a printout of the source code from **www.ediblearrangements.com**. Exhibit 51 is a printout of the source code from www.fruitflower.com. I understand that the encoded text, which does not appear when the Edible Arrangements' Web site is viewed, is searchable and indexable by Internet search engines. I also understand that the use of these words in the Edible Arrangements source code can give the Edible Arrangements Web site a higher ranking than Incredibly Edible s Web site by some search engines.

26. The source code of the Edible Arrangements Web site, **www.ediblearrangements.com**, and www.fruitflower.com shows, in addition to Incredibly Edible s FRUITFLOWERS marks, terms or portions of Incredibly Edible s INCREDIBLY EDIBLE marks. Exhibit 50 shows the printout of the source code for the **www.ediblearrangements.com** Web site, and Exhibit 51 a printout of the source code for the **www.fruitflower.com** Web site. Edible Arrangements uses the INCREDIBLY EDIBLE marks, or a confusingly similar portion to draw traffic to its Web site. For example, when the phrase edible delite is searched on **www.looksmart.com**, **www.msn.com**, and **www.aol.com** the Edible Arrangements Web site is among the sites listed. Printouts of the searches are provided as Exhibits 52, 53, and 54, respectively.

27. If Edible Arrangements is permitted to continue the unauthorized use of Incredibly Edible's INCREDIBLY EDIBLE marks and FRUITFLOWERS marks, it will further irreparably

damage our company.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____, 2002, at _____, Pennsylvania.

_____
Ellen Davis